# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **DEREK DEWAYNE AVERY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| **CORECIVIC, INC.; CORECIVIC** | ) | **JURY DEMAND** |
| **OF TENNESSEE, LLC; MARTIN FRINK;** | ) | |
| **JACOB CRAMER; ALICIA BARMAN;** | ) | |
| **MONIQUE WALKES; ARTURO** | ) | |
| **RAMIREZ MENDOZA;** | ) | |
| **OLUWASEGUN ADENIYI;** | ) | |
| **SERGEANT DONALD MORRIS;** | ) | |
| **NURSE ANITA McCARD;** | ) | |
| **JOHN DOES 1-5;** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes now the Plaintiff, Derek Dwayne Avery ("Mr. Avery"), by and through his attorney, and for his causes of action against the Defendants would respectfully show to the Court and Jury as follows:

### I. THE PARTIES

1.1    The Plaintiff, Mr. Avery, is a prisoner in the custody of the Tennessee Department of Corrections ("TDOC"), housed at all relevant times at Trousdale-Turner Correctional Center ("TTCC") located at 140 Macon Way, Hartsville, Tennessee 37074.

1.2    The Defendant, CoreCivic, Inc. ("Defendant CoreCivic"), is, upon information and belief, a foreign, for-profit corporation organized in the state of Maryland and operates the TDOC prison TTCC. CoreCivic and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at TTCC.

1.3     CoreCivic of Tennessee is a limited liability corporation incorporated under the laws of Tennessee and operates the TDOC prison at TTCC. CoreCivic and its employees and agents are acting under color of state law in all of their activities with respect to the incarceration of prisoners at TTCC.

1.4     The Defendant, Martin Frink ("Defendant Frink"), was acting under color of state law as Warden of TTCC in 2022 and was employed by Defendant CoreCivic under contract with TDOC at that time. Defendant Frink is being sued in his individual capacity for his deliberate indifference to his duties as an officer for the TDOC facility TTCC.

1.5     The Defendant, Jacob Cramer ("Defendant Cramer"), at all times relevant to this Complaint was acting under color of state law as an officer at TTCC employed by Defendant CoreCivic under contract with TDOC. Defendant Cramer is being sued in his individual capacity for his deliberate indifference to his duties as an officer for the TDOC facility TTCC.

1.6     The Defendant, Shift Sergeant Donald Morris ("Defendant Morris"), at all times relevant to this Complaint was acting under color of state law as Sergeant employed by Defendant CoreCivic under contract with the TDOC. Defendant Morris is being sued in his individual capacity for his failure to perform, neglect of, and deliberate indifference to his duties as a Sergeant for the TDOC facility TTCC.

1.7     The Defendant, Charge Nurse Anita McCard ("Defendant McCard"), at all times relevant to this Complaint was acting under color of state law a nurse employed by Defendant CoreCivic under contract with the TDOC. Defendant McCard is being sued in her individual capacity for her failure to perform, neglect of, and deliberate indifference to her duties as a nurse for the TDOC facility TTCC.

1.8     The Defendant, Monique Walkes ("Defendant Walkes"), at all times relevant to this Complaint was acting under color of state law as an officer at TTCC employed by Defendant CoreCivic under contract with TDOC.  Defendant Walkes is being sued in her individual capacity for her deliberate indifference to her duties as an officer for the TDOC facility TTCC.

1.9     The Defendant, Arturo Ramirez Mendoza ("Defendant Mendoza"), at all times relevant to this Complaint was acting under color of state law as an officer at TTCC employed by Defendant CoreCivic under contract with TDOC.  Defendant Mendoza is being sued in his individual capacity for his deliberate indifference to his duties as an officer for the TDOC facility TTCC.

1.10    The Defendant, Alicia Barman ("Defendant Barman"), at all times relevant to this Complaint was acting under color of state law as an officer at TTCC employed by Defendant CoreCivic under contract with TDOC.  Defendant Barman is being sued in her individual capacity for her deliberate indifference to her duties as an officer for the TDOC facility TTCC.

1.11    The Defendant, Oluwasegun Adeniyi ("Defendant Adeniyi"), at all times relevant to this Complaint was acting under color of state law as an officer at TTCC employed by Defendant CoreCivic under contract with TDOC.  Defendant Adeniyi is being sued in his individual capacity for his deliberate indifference to his duties as an officer for the TDOC facility TTCC.

1.12    The Defendants, John Does 1-5 are, upon information and belief, correctional officers and/or employees of Defendant CoreCivic assigned to monitor the Echo Charlie Unit of TTCC on or about June 23, 2024. Mr. Avery has attempted to identify these individuals, but the information currently available to him is not sufficient to discover the identity of these individuals. Upon information and belief, CoreCivic has concealed the identities of these individuals by failing to name them in investigative reports of the incident at issue in this Complaint; in failing to

properly take witness statements from them; and in concealing images of them on screen shots of surveillance video reviewed pre-filing.

## II. JURISDICTION

2.1 This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C.A. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C.A. § 1983. This Court has jurisdiction over the State claims asserted in this action pursuant to 28 U.S.C.A. § 1367 (Supplemental).

## III. VENUE

3.1 Venue of this action is proper pursuant to 28 U.S.C.A. 1391(b) in that the events giving rise to the action occurred in the Middle District of Tennessee.

## IV. NATURE OF THE CASE

4.1 This action arises under the **Eighth** Amendment to the United States Constitution and under federal law, specifically, the Civil Rights Act of 1964 as (amended), 42 U.S.C.A § 1983 *et seq*. for violations of the Constitutional Rights of Mr. Avery, and on pendent claims arising under state law.

## V. FACTS

5.1 At all relevant times, Mr. Avery was, and is presently, an inmate in the custody of the TDOC.

5.2 In August 2021, Mr. Avery was transferred to TTCC, in Hartsville, Trousdale County, where he remains to present.

5.3 TTCC is managed by the TDOC, which contracts with Defendant CoreCivic to provide services to this facility, including security services.

5.4     In February 2022, Mr. Avery was the victim of a physical assault by multiple inmates.

5.5     Mr. Avery expressed fear of the gang-affiliated inmates that attacked him, and requested protective custody.

5.6     Although the initial investigator, Kaitlyn Brown, recommended protective custody or transfer, the panel reviewing the request denied it.

5.7     The panel's denial of protective custody was reviewed and approved by the facility warden, Defendant Fink.

5.8     The following month, on or about March 7, 2022, Mr. Avery was sexually assaulted, requiring treatment at Nashville General Hospital.

5.9     Just days later, on March 19, 2022, another inmate attempted to sexually assault Mr. Avery.

5.10    Although requested and necessary, Mr. Avery was never granted protective custody at TTCC.

5.11    On June 23, 2024, Mr. Avery was housed in the Echo Charlie unit of TTCC in general population; this area of the facility is monitored by a surveillance camera system known as Milestone.

5.12    At approximately 4:49 p.m. on June 23, 2024, Mr. Avery was in the day room of the Echo Unit of TTCC, when multiple inmates climbed from the first to the second tier of Echo Unit, and Aaron Barnett ("Barnett"), attacked Mr. Avery.

5.13    Despite the attack, which involved approximately nine (9) inmates and was captured on the facility's surveillance system, no correctional officer or other employee from TTCC responded to stop the attack or to check on Mr. Avery's condition.

5.14 In the course of the attack, Mr. Avery was stabbed with a homemade knife approximately four (4) times, once in the right abdomen; once in the back; and twice in the head, resulting in two (2) skull fractures.

5.15 Because no TTCC employee responded to help him, Mr. Avery had to retreat to his cell, Echo Charlie 122.

5.16 Upon information and belief, Mr. Avery and/or other inmates in Echo Charlie repeatedly requested medical attention for Mr. Avery, to no avail.

5.17 Upon information and belief, Mr. Avery remained without any treatment until approximately 5:58 p.m., over an hour after the attack, when other inmates drug Mr. Avery's body to the front door of the unit in an attempt to get him emergency medical care.

5.18 Upon information and belief, Defendants Cramer, Morris, Walkes, Mendoza, Barman, Adeniyi, and/or John Does 1-5 were not properly supervising or monitoring Echo Charlie unit at the time of the assault or in the aftermath of the assault, as no one stopped the assault or rendered any aid to Mr. Avery in the hour and nine (9) minutes between the assault and when the inmates drug Mr. Avery to the front door of Echo unit.

5.19 After inmates were finally able to get the attention of TTCC staff, Mr. Avery was placed on a stretcher and taken to the medical unit.

5.20 Defendant McCard, the charge nurse on duty, filed out a traumatic injury report, in which she stated that the incident took place at 5:50 p.m., and indicated that Mr. Avery would require transport to an outside medical facility.

5.21 Despite the fact that Mr. Avery was profusely bleeding from multiple stab wounds, Defendant McCard did not immediately request emergency medical care as TDOC policy demands.

5.22    At approximately 6:08 p.m., four (4) inmates were observed at Fox crash gate attempting to get into Echo unit; these inmates were directed back to the Delta Unit.

5.23    Also at approximately 6:08 p.m., responders, presumably Morris, Cramer, Walkes, Mendoza, Barman, Adeniyi, and/or John Does 1-5 finally arrived to Echo unit to secure Echo Charlie and identify the aggressors involved in the attack on Mr. Avery.

5.24    Multiple homemade weapons were recovered from inmates in Echo Charlie.

5.25    At approximately 6:11 p.m., over one (1) hour and twenty (20) minutes after Mr. Avery was stabbed multiple times, emergency medical services ("EMS") were finally requested for Mr. Avery.

5.26    EMS arrived at approximately 6:21 p.m., where Mr. Avery was found with stab wounds to his head, abdomen, and back; dangerously low blood pressure; and was lethargic.

5.27    TTCC personnel, including but not limited to Defendant McCard, falsely reported to EMS that the attack occurred at approximately 5:45 p.m. and that Mr. Avery was not found for approximately thirty (30) minutes.

5.28    In fact, Mr. Avery was attacked at approximately 4:50 p.m., and he was not found by any employee of TTCC, but rather was presented to TTCC employees by other inmates concerned for his life after over an hour of trying to get the attention of TTCC staff after Mr. Avery was attacked.

5.29    Due to the severity of his injuries, EMS determined a Life Flight was necessary.

5.30    Mr. Avery was flown to Vanderbilt University Medical Center ("VUMC"), where he was treated for life-threatening injuries.

5.31 At VUMC, Mr. Avery was diagnosed with two (2) open fractures of his skull; pneumocephalus; a lacerated liver; two (2) additional stab wounds to the back and abdomen; and significant subcutaneous emphysema from the neck to the chest wall.

5.32 TDOC policy requires detailed written reports in the course of any investigation involving serious injury to an inmate.

5.33 Following Barnett's attack on Mr. Avery, Stephanie Ann Angell ("Angell"), "Quality Manager" at TTCC undertook the completion of an incident report, which recited the time of the attack, 4:50 p.m., and the time and manner of response, when the inmates brought Mr. Avery to the door at 5:58 p.m. with multiple stab wounds.

5.34 Angell did not list Shift supervisor, Defendant Morris, as an employee witness, despite the fact he was noted as the first to report the attack.

5.35 Defendant Morris' written statement was not taken as part of TTCC's investigation.

5.36 Although Angell listed Defendants Walkes, Mendoza, Barman, and Adeniyi as "participants" in the event, they were not noted to have been witnesses.

5.37 Upon information and belief, Defendants Walkes, Mendoza, Barman, and Adeniyi did not fill out 5-1C incident statements, although Angell incorrectly reported that such statements were completed by them.

5.38 Angell declined to refer the attack for investigation by Warden, Administrator, or Administrative Duty Officer ("ADO").

5.39 The investigation was completed and concluded by TTCC Chief of Security Jonathan Moore ("Moore").

5.40 Although Moore stated in his report that he examined photographs and 5-1C incident statements, there were no such documents preserved for review.

5.41 Upon information and belief, no one was properly monitoring Echo Charlie at the time of the attack or in the period of time thereafter.

5.42 In August 2024, Moore sent a fax to TDOC that stated that no 5-1C staff witness statements were completed "due to staff no longer working at the facility."

5.43 Any such statements should have been preserved as soon as practicable after the attack.

5.44 Despite a complete lack of evidence, Moore's investigation determined that Mr. Avery was the initial aggressor against Barnett, and that Barnett later attacked Mr. Avery, causing his catastrophic injuries.

5.45 Upon information and belief, this finding was an attempt to deflect responsibility from TTCC staff for failing to prevent or stop the attack, and/or for failing to render emergency aid to Mr. Avery in a timely fashion.

5.46 Moore further determined in his Incident Investigation Report that there were no "policy, procedure, or practice violations" in the course of the incident, without any factual basis or evidence for this finding.

5.47 Barnett was given a disciplinary write up for attacking Mr. Avery with a Weapon, a homemade knife.

5.48 Barnett was criminally indicted for the attack on Mr. Avery.

5.49 Vince Vantell, Warden of TTCC at the time of this incident, resigned effective April 2025, following a period of involuntary administrative leave and amid a Department of Justice investigation into inmate physical and sexual violence, as well as the understaffing of TTCC.

5.50 The Defendants, as listed herein, were aware of their duty to properly supervise inmates so as to prevent and/or stop violent attacks, and prevent contraband from entering the facility, *to wit*, weapons.

5.51 The Defendants, as listed herein, were aware of their duty to protect prisoners, including Mr. Avery, from physical assaults by other inmates.

5.52 The Defendants, as listed herein, were aware of the substantial risk of harm to Mr. Avery posed by physical assaults from other inmates, especially those gang affiliated, as this was well-documented in his institutional file.

5.53 The Defendants, as listed herein, disregarded the substantial risk of harm to Mr. Avery and failed to stop the assaults against him, or summon emergency medical treatment in a timely fashion thereafter.

5.54 The Defendants, as listed herein, were aware of the substantial risk of harm to inmates due to understaffing and rampant inmate-on-inmate violence within TTCC.

5.55 The Defendants, and each of them, disregarded the substantial risk of harm to Mr. Avery and when they failed to stop the brutal attack and/or promptly summon emergency medical attention thereafter.

5.56 At all relevant times, the Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of the State of Tennessee and under the authority of their office as employees, contractors, and/or correctional employees in the State of Tennessee.

5.57 Mr. Avery was subjected to threats of physical violence, actual physical violence, and resultant physical and emotional injuries from all of these attacks.

5.58 Mr. Avery continues to suffer from post-traumatic stress disorder; anxiety; depression; inability to sleep; headaches; and nightmares, among other medical issues.

# COUNT I
## (Eighth Amendment - Failure to Protect - Defendants Frink, Cramer, Morris, Walkes, Mendoza, Barman, Adeniyi, and John Does 1-5)

6.1     The Defendants, under color of law, deprived Mr. Avery of rights secured by the Eighth Amendment to the United States Constitution, including his right to be free from physical attacks by gang-affiliated inmates.

6.2     Mr. Avery's right to be free from physical violence by other inmates was clearly established at the time of the attack by Barnett.

6.3     Mr. Avery faced an objectively excessive risk of harm to his life and safety based upon prior violent physical and sexual assaults on him that were documented in his institutional file, and which required medical treatment, yet Mr. Avery was denied protective custody by Defendant Frink.

6.4     Mr. Avery faced an objectively excessive risk of harm to his life and safety based upon being housed in TTCC, which is well-known to be overrun with inmate violence and gang activity.

6.5     The Defendants were deliberately indifferent to Mr. Avery's risk of harm, in that they had actual notice of it, as his institutional file contained reports of violent physical and sexual assaults requiring medical treatment.

6.6     Defendant Frink specifically knew of the significant risk of harm to Mr. Avery and was deliberately indifferent to that risk by rejecting Mr. Avery's request for protective custody which had already been recommended by other TTCC staff.

6.7     The Defendants had specific notice and were aware of the attack as it was captured on the facility's surveillance system, Milestone.

6.8     Despite knowing the attack was ongoing, no one at the facility did anything to intervene and/or stop the violent attack on Mr. Avery.

6.9     The conduct of the the Defendants described above deprived Mr. Avery of his right to be free from violent physical attack by Barnett as guaranteed under the Eighth Amendment to the United States Constitution.

6.10    The Defendants deliberately disregarded that excessive risk and failed to protect Mr. Avery from the attack by Barnett.

6.11    Each of the Defendants are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

**COUNT II**
**(Deliberate Indifference to a Serious Medical Need Against Defendants Morris, Cramer, McCard, Walkes, Mendoza, Barman, Adeniyi, and John Does 1-5)**

7.1     The Defendants have, under color of state law, substantially deprived Mr. Avery of his clearly established rights, privileges, and immunities secured by the Eighth Amendment to the United States Constitution including, but not limited to, the right to be free from cruel and unusual punishment including the right not to be deprived necessary medical care through the deliberate indifference of correctional staff.

7.2     The Defendants have breached their duty to hold Mr. Avery free from known risks of harm to him.  The procedures implemented and executed by the above-named individuals resulted in a breach of duty owed by said Defendants to him while in the custody of TTCC.

7.3    The Defendants were deliberately indifferent to Mr. Avery's need for immediate emergency treatment of obvious, serious medical needs, *to wit*, multiple stab wounds, including two (2) that resulted in skull fractures.

7.4    TDOC policies require a four (4) minute response time to emergency medical needs.

7.5    The Defendants were deliberately indifferent to Mr. Avery's need for emergency medical care for obvious and serious medical needs.

7.6    The Defendants were deliberately indifferent to Mr. Avery's need for prompt treatment of physical injuries, including stab wounds to the head, abdomen, and back; two (2) skull fractures; extensive subcutaneous emphysema; and a lacerated liver, all of which eventually required him to be airlifted to Vanderbilt Medical Center, where he received life-saving treatment.

7.7    The Defendants, and each of them, had actual knowledge of Mr. Avery's obvious and serious physical injuries, as the attack was captured on TTCC's surveillance video system, and Mr. Avery encountered the individual Defendants and was profusely bleeding from multiple stab wounds; lost consciousness; and was minimally responsive.

7.8    The Defendants failed to contact EMS from the time of his attack at 4:50 p.m., until 6:11 p.m.

7.9    This failure was a breach of the individual Defendants' duty to provide necessary emergency care and treatment to Mr. Avery and demonstrated deliberate indifference to the Plaintiff's civil rights and was, therefore, a violation of the Plaintiff's rights under the United States Constitution and is actionable under 42 U.S.C. Section 1983.

7.10    As a result of Defendants' actions, inaction and deliberate indifference, the Plaintiff suffered mental and psychological distress and intolerable physical pain.

7.11 The Defendants' actions were so outrageous as to shock the conscience and are not tolerated in a civilized society. Said actions were intentionally, maliciously, and recklessly oppressive and displayed deliberate indifference to the rights and well- being of the Plaintiff such that said actions are punitive in nature.

## COUNT III
### (CoreCivic Liability - Custom)

8.1 There is a well-settled custom at CoreCivic facilities, and TTCC particularly, that inmate-on-inmate violence was and is tolerated and accepted, with no meaningful recourse for the victimized inmates or their families.

8.2 Inmate-on-inmate violence is significantly higher at CoreCivic facilities than other TDOC facilities, and has been for years, as documented by governmental agencies and audits.

8.3 CoreCivic additionally has a custom of failing to properly investigate and discipline its officers, as is evidenced by the cursory investigation and complete lack of discipline for any TTCC employee as it relates to the assault on Mr. Avery resulting in serious injury.

8.4 The conditions at TTCC, including inmate violence, are so severe that the United States Department of Justice ("USDOJ") has been and is conducting an investigation into the conditions of confinement, specifically at TTCC.

8.5 According to the USDOJ, "[b]ased on an extensive review of publicly available information and information gathered from stakeholders, the department has found significant justification to open this investigation, **including state audits that have flagged dangerous understaffing and safety concerns since Trousdale Turner first opened in 2016**. The investigation will examine whether Tennessee protects those incarcerated at Trousdale Turner from harm, **including physical violence and sexual abuse**."

8.6     As noted by the USDOJ, TTCC has been plagued with problems since it opened its doors, including staffing shortages, and physical and sexual assaults that far exceed other facilities.

8.7     Mr. Avery is exactly the type of individual that the USDOJ has described, as he has fallen victim to repeated assaults for well over a year with no meaningful response from CoreCivic's understaffed facility at TTCC.

8.8     CoreCivic had a long-standing, well-settled unwritten custom to tolerate inmate-on-inmate physical, sexual violence, and gang violence, thus leading to the USDOJ investigation.

8.9     CoreCivic's custom of tolerating such violence, including failing to properly investigate and discipline officers who did not follow policies, thus leading to injured inmates, was the moving force behind Mr. Avery's ongoing assaults (physical and sexual) with no recourse or protection.

8.10    As was the custom at TTCC, the attack on Mr. Avery was not meaningfully investigated, *to wit*, there were no photographs taken of the scene of the crime or any injuries; no evidence collected; and no statements taken from staff.

8.10    As a result of the well-settled custom of tolerating inmate-on-inmate physical and sexual assaults with no meaningful response, Mr. Avery was harmed and continues to suffer damages as stated herein.

**COUNT IV**
**(CoreCivic Liability - Ratification)**

9.1     Following the attack on Mr. Avery, there was no meaningful investigation of the acts and omissions leading up to it, including but not limited to, the lack of monitoring of Echo Charlie, or intervention in the attack and its aftermath. Upon information and belief, no action was

taken to properly investigate and/or discipline anyone for failing to properly supervise inmates, including Barnett, so as to prevent similar attacks in the future.

9.2    Upon information and belief, CoreCivic has conducted no training or retraining on proper monitoring of inmates per TDOC policy and/or promptly summoning emergency medical treatment for inmates within four (4) minutes as TDOC policy demands.

9.3    By their inaction, CoreCivic, through its final policymaker(s) at the TTCC, including but not limited to Defendant Frink, Chief of Security Moore, and "Quality Manager" Angell, implicitly ratified the conduct of TTCC employees, which was improper; violated TDOC policies; and violated Mr. Avery's rights under the Eighth Amendment to the Constitution.

9.4    "Quality Manager" Angell declined to refer the investigation to the warden or other administrative authorities; likewise, Chief of Security Moore determined that no policies or procedures were violated, thereby acquiescing to the lack of inmate supervision that led up to the attack on Mr. Avery and the failure to properly summon emergency medical attention that followed it.

9.5    In fact multiple policies were violated including, but not limited to, failing to keep proper watch and supervision of inmates; failing to properly summon emergency medical treatment; and failing to properly conduct the investigation into the attack on Mr. Avery.

9.6    The above described acts and omissions demonstrated deliberate indifference on the part of CoreCivic's policymakers at TTCC to the constitutional rights of persons within TTCC, and were the cause of the violations of Mr. Avery's rights alleged herein.

## COUNT V
### (Negligence against CoreCivic and the Individual Defendants)

10.1 CoreCivic and its employees at TTCC have a duty to treat Mr. Avery kindly and humanely; to properly train, supervise, and discipline its employees; to protect Mr. Avery from unreasonable harm; to protect his life and health; to have its employees refrain from conduct which created an unreasonable risk of injury or death; and to provide him with his obvious medical needs.

10.2 CoreCivic and its employees at TTCC have a duty to monitor inmates so as to prevent, detect, and or stop criminal behavior, including violent behavior.

10.3 CoreCivic and its employees at TTCC have a duty to observe and supervise inmates in their custody at least once per hour on an irregular schedule.

10.4 CoreCivic and its employees at TTCC have a duty to provide medical care, including emergency medical care, to inmates in their custody.

10.5 CoreCivic and its employees at TTCC have a duty to immediately summon emergency medical care when needed.

10.6 CoreCivic and its employees at TTCC have a statutory and contractual duty to supervise and provide security for inmates, and to prevent harm to inmates housed at its facilities, including TTCC.

10.7 CoreCivic, and the individual Defendants named herein, have breached their duty by failing to supervise inmates, including Barnett, and prevent, intervene, and/or stop criminal behavior perpetrated on Mr. Avery, *to wit*, multiple stabbings and serious injury resulting therefrom.

10.8    CoreCivic and each of the individual Defendants further breached their duty by failing to monitor the Milestone surveillance video, and heed inmate emergency requests, and promptly obtain emergency medical care for Mr. Avery's injuries.

10.9    CoreCivic and each of the individual Defendants further breached their duty by failing to abide by the policy of a four-minute response time for emergency medical needs.

10.10    CoreCivic and the individual Defendants were actually aware of the rampant violence at TTCC, therefore the damages to Mr. Avery was foreseeable.

10.11    CoreCivic and the individual Defendants were actually aware of multiple physical and sexual assaults on Mr. Avery, therefore the damages to Mr. Avery was foreseeable.

10.12    CoreCivic and the individual Defendants were actually aware of the violent attack on Mr. Avery, as it was captured on the surveillance monitoring system at TTCC, therefore the damages to Mr. Avery was foreseeable.

10.13    CoreCivic is responsible for the negligent conduct of its employees, here Defendants Cramer, Morris, McCard, and John Does 1-5, and each of them, under the theory of *respondeat superior.*

## DAMAGES

10.1    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Avery experienced emotional and physical harm and trauma.

10.2    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Avery experienced and continues to experience mental and emotional anguish.

10.3 As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Avery has permanent disfigurement from the repeated attacks by gang members left unsupervised at TTCC.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully demand judgment against Defendants, and each of them, jointly and severally as follows:

1. That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2. That Mr. Avery be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law;

3. That Mr. Avery be awarded a judgment for punitive damages in an amount that is necessary to punish the Defendants and to deter others from committing similar wrongs in the future;

4. That Mr. Avery be awarded his costs, litigation costs, discretionary costs, pre- and post judgment interest, and attorney's fees pursuant to 42 U.S.C. §1988;

5. That Mr. Avery be granted immediate injunctive relief to relocate him to a different facility where he will be protected from the immediate risk of harm he faces; and

6. That Mr. Avery be granted such other, further, and general relief as to which he is entitled.

Respectfully Submitted,

/s/ *Leanne A. Thorne*
Leanne A. Thorne, No. 023481
P. O. Box 262
Lexington, TN 38351
(731) 968-9810
thornelaw@hotmail.com

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY: __/s/ *James Bryan Moseley*__
      James Bryan Moseley, No. 021236
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
Phone: (615) 254-0140
Fax: (615) 634-5090
bryan.moseley@moseleylawfirm.com

*Attorneys for Plaintiff*